**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
Max S. Roberts (*Pro Hac Vice* Forthcoming)
Victoria X. Zhou (*Pro Hac Vice* Forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com
mroberts@bursor.com
vzhou@bursor.com

**BURSOR & FISHER, P.A.**
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jwilner@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARIEL GILLIGAN and LOGAN MITCHELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN DATA CORPORATION, EXPERIAN PLC, EXPERIAN INFORMATION SOLUTIONS, INC., AND TAPAD, INC.,<br><br>Defendants. | Case No. 3:25-cv-02873<br><br>Hon. Rita F. Lin<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT** |

## TABLE OF CONTENTS


**PAGE**

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. PLAINTIFFS HAVE ARTICLE III STANDING ..... 2

II. PLAINTIFFS STATE A CLAIM FOR INTRUSION UPON SECLUSION ..... 5

III. PLAINTIFFS ALLEGE A VIOLATION OF CIPA § 631 ..... 9

A. Plaintiffs Allege The Contents Of Their Communications Were Intercepted ..... 9

B. Plaintiffs Allege Their Communications Were Intercepted In Transit ..... 9

C. Plaintiffs Allege Defendants Used The Intercepted Information ..... 10

IV. PLAINTIFFS ALLEGE A VIOLATION OF THE ECPA ..... 11

V. PLAINITFFS ALLEGE A VIOLATION OF CIPA § 638.51 ..... 12

A. CIPA § 638.51 Has A Private Right Of Action ..... 12

B. The Tapad Pixel Is A "Pen Register" Under CIPA ..... 13

C. The Rule Of Lenity Does Not Save Defendants' Argument ..... 14

VI. PLAINTIFFS ALLEGE DEFENDANT WAS UNJUSTLY ENRICHED ..... 15

CONCLUSION ..... 15

**TABLE OF AUTHORITIES**


**PAGE(S)**

**CASES**

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ........................................ 15

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........................................ 11

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........................................ 2, 3, 5, 9

*Capitol Recs. Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009) ........................................ 14

*Carolus v. Nexstar Media Inc.*,
2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ........................................ 6

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ........................................ 13

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ........................................ 10

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ........................................ 10

*Dep't of Justice v. Reporters Committee for Freedom of Press*,
489 U.S. 749 (1989) ........................................ 2

*Doe v. Call-On Doc, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) ........................................ 10

*Doe v. Tenet Healthcare Corp.*,
2025 WL 1635956 (E.D. Cal. June 9, 2025) ........................................ 12

*Frasco v. Flo Health, Inc.*,
2025 WL 1433825 (N.D. Cal. May 19, 2025) ........................................ 1, 2, 3

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ........................................ 2, 4, 8, 13

*Gila River Indian Cmty. v. United States*,
729 F.3d 1139 (9th Cir. 2013) ........................................ 12

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 3, 4, 14

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 8

*Heiting v. FKA Distrib. Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ........ 12

*Heiting v. FKA Distributing Co.*,
2025 WL 1430663 (C.D. Cal. May 15, 2025) ........ 4

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ........ 6, 7

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........ 11

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 8

*In re Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ passim

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) ........ 3

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. June 13, 2022) ........ 9

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........ 8

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 8

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ passim

*Khamooshi v. Politico LLC*,
2025 WL 1408896 (N.D. Cal. May 13, 2025) ........ 6

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ........ 6

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) ........ 13

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 8

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) ........ 11

*Mata v. Zillow Grp.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ........ 10

*Mirmalek v. Los Angeles Times Communications LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ 4, 13

*Moody v. C2 Educ. Sys. Inc*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........ 12, 13

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023) ........ 5

*R.C. v. Sussex Publishers, LLC*,
2025 WL 1735994 (N.D. Cal. June 23, 2025) ........ 11

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ........ 4

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 9

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ........ 11

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 2, 8

*Riganian v. Liveramp Holdings, Inc.*,
2025 WL 2021802 (N.D. Cal. July 18, 2025) ........ passim

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ........ 14

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ........ 6

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) ........ 13

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........ passim

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ........ 14, 15

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ........ 9

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ........ 12

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 6, 7

*Williams v. DDR Media, LLC*,
2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ........ 8

**STATUTES**

Cal. Civ. Code § 1798 ........ 7

Cal. Pen. Code § 637.2 ........ 12, 13

Cal. Pen. Code § 638.51 ........ 7

**RULES**

Fed. R. Civ. P. 8(d)(2) ........ 15

**INTRODUCTION**

This case involves Defendants' violation of the privacy of nearly every American who uses the internet. Plaintiffs allege that "Experian is a multinational data analytics and consumer credit reporting company and one of the largest data brokers in the world." Compl. ¶ 133. "Experian 'advertises data on 95% of the U.S. population … spanning thousands of attributes'" including "mobile location data on users and the ability to link information to 500 million email addresses and 275 million addressable cookies." *Id.* ¶ 135. A significant portion of this data is gathered from the internet, where Defendants' Tapad Pixel "tracks in real time and records indefinitely the personal information and specific web activity" of Plaintiffs and Class Members. *Id.* ¶ 1. "As a result of Tapad being called to thousands or millions of websites, Defendants are collecting various forms of PII and web activity records of nearly every American. The information collected, on its own, is enough to identify the individual internet user. But this is only the first step in Defendants' practices of dragnet surveillance. Defendants also combine the data from each and every website a person visits with other data collected by Experian to bolster the profiles of Experian sells as part of its [Consumer Sync, Consumer View, and other data] products." *Id.* ¶¶ 223-225. The creation of these profiles "require[s] Experian to match the identity of each individual with the data collected about them." *Id.* ¶ 229. "In addition to contributing vast amounts of data to Experian's data profiles, the data collected by Tapad is utilized by the partner pixels to conduct hyper-targeted advertising through the real-time-bidding process." *Id.* ¶ 230. Few privacy violations are more egregious than Defendants' here.

Seeking to minimize the immense scope of these privacy violations, Defendants attempt to characterize the dragnet surveillance of Plaintiffs and Class Members as the routine collection of "general browsing and device information." MTD at 1. This ignores Plaintiffs' allegations. The scale of the harm alleged—namely, the collection, processing, and sale of information regarding "nearly every aspect of every American's life"—is sufficient injury to confer Article III standing. Compl. ¶ 229; *see, e.g.*, *Frasco v. Flo Health, Inc.*, 2025 WL 1433825, at *11 (N.D. Cal. May 19,

2025); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 941 (N.D. Cal. 2023); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6-7 (N.D. Cal. July 14, 2025).

The remainder of the Motion makes arguments that have been routinely rejected by courts in this District (including this Court) and beyond, particularly in instances such as this, where vast amounts of personal data are improperly collected and shared with numerous entities for profit. *See, e.g.*, *Katz-Lacabe*, 668 F. Supp. 3d at 941-43, 944-45; *Gabrielli*, 2025 WL 1939957, at *6-7, 9-12, 15-16; *Frasco*, 2025 WL 1433825, at *11; *Shah v. Fandom, Inc.* 754 F. Supp. 3d 924, 928-33 (N.D. Cal. 2024) (Lin, J.); *Brown v. Google LLC* 685 F. Supp. 3d 909, 923-26, 935-36, 940-42 (N.D. Cal. 2023); *Riganian v. Liveramp Holdings, Inc.*, --- F. Supp. 3d ---, 2025 WL 2021802, at *5-7, 9-13 (N.D. Cal. July 18, 2025). For the following reasons, Defendants' Motion should be denied.

## ARGUMENT

### I. PLAINTIFFS HAVE ARTICLE III STANDING

Defendants argue that Plaintiffs lack Article III standing. MTD at 4. This is wrong.

"Individuals have a time-honored right to control access to their private information and affairs. The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others. Consequently, the legal injury at the heart of plaintiffs' case -- the capture of personal information without a user's consent -- occurs when the personal information is obtained in the first instance." *Frasco*, 2025 WL 1433825, at *11 (internal quotation marks and citations omitted). Similarly, the California Supreme Court has held the purpose of wiretapping statutes like the CIPA is to protect the right of an individual "to control the nature and extent of the firsthand dissemination of his statements." *Ribas v. Clark* 38 Cal. 3d 355, 360-61 (1985). In other words, the substantive privacy interest the CIPA protects is a person's right to "control [] information concerning his or her person." *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020). This privacy interest has been historically recognized by "both the common law and the literal understandings of privacy." *Dep't of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 763 (1989). Consequently, "obtaining user information" "is the 'concrete harm,'" as the user "has lost control over her private information

because of another's intentional actions." *Frasco*, 2025 WL 1433825, at *12; *see also In re Google Inc. Cookie Placement Consumer Privacy Litig*. 934 F.3d 316, 325 (3d Cir. 2019) ("In an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion … that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data [] is untenable.").

This reasoning extends whether the information here is "contents" or "record" information. Plaintiffs have every right to control who gets to know intimate details about their lives, habits, and interests. *Brown*, 685 F. Supp. 3d at 941 ("Ninth Circuit law indicates [] users (have a reasonable expectation of privacy) over URLs that disclose either unique search terms or the particular document within a website that a person views."). And Plaintiffs have the right to control who gets to know information that identifies them. *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023). Plaintiffs' "inability to control or prevent the unauthorized exploration of [their] private affairs is the root of the alleged injury." *Id*. (citing *In re Facebook*, 956 F.3d at 599).

Simply put, information identifying who Plaintiffs are and how they interacted with dozens or even hundreds of websites was *actually* collected by Defendant without authorization, deanonymized, combined with information from other sources, compiled into detailed profiles, and then further disclosed to other advertisers, data brokers and giant technology companies for monetary benefit. Compl. ¶¶ 255-258 ("Tapad provided Microsoft and The Trade Desk with identity resolution services so that those entities could deanonymize the data it collected on Plaintiff Gilligan, bolster their own data profiles, and sell her information during the real-time-bidding process. Tapad also collected information about Plaintiff Gilligan, …. Defendants compiled this information into a profile on Plaintiff Gilligan and added the bolstered profile to Experian's suite of data products []. Defendants also, by using the cookies loaded onto Plaintiff Gilligan's browser, tracked her future web browsing activity across the internet and assisted other Partner Pixels in tracking her and wiretapping her communications with websites."), *id.* ¶¶ 277-280 (same allegations for Plaintiff Mitchell), *id.* ¶¶ 49-50 ("Defendants are data brokers that focus on collecting as much information about users as possible to create comprehensive user profiles. … those profiles are shared by Defendants with other entities (and vice versa) to form the most

fulsome picture with the most attributes as possible. And those profiles are offered up for sale to interest advertisers through real-time bidding, where users will command more value the more advertisers know about a user"), *id.* ¶ 60 ("It is estimated that Tapad collected information on 1% of all web traffic—which constitutes hundreds of billions of website interactions—in July 2024 alone."), *id.* ¶ 137 (Defendants "developed products that combine … 'offline consumer data set (purchase behaviors, interests, lifestyle info) with [collected] online consumer data (media consumption habits and device usage)."), *id.* ¶ 2 ("This unlawfully collected information is worth billions of dollars to Defendants because it … creates individual sales of advertisements in the real-time-bidding ecosystem present on thousands of major websites."), *id.* ¶¶ 225-227 (Defendants "combine the data from each and every website a person visits with other data collected by Experian. … Experian's business model, … advertises data on 95% of the U.S. population," spanning "4.4 billion economic transactions" across "thousands of data attributes.").

Such conduct confers standing. *Shah*, 754 F. Supp. 3d at 932 ("Plaintiffs have plausibly alleged that they were injured by being tracked across multiple visits for marketing and advertising purposes, and that they did not expect or agree to such tracking."); *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *3 (N.D. Cal. Mar. 28, 2025) (collecting cases holding that "[i]n determining statutory standing under CIPA, courts have held IP address collection for targeted advertisement, creates a concrete injury-in-fact."); *Gabrielli*, 2025 WL 1939957, at *6 ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to … confer standing."); *Katz-Lacabe*, 668 F. Supp. 3d at 940 (finding standing where plaintiffs alleged defendant "amass[ed] vast amounts of personal data for the purpose of identifying individuals and aggregating their many identifiers" to target them with advertising"); *Greenley*, 684 F. Supp. 3d at 1038 (finding Article III standing where "Plaintiff and members of the Class conferred a benefit on Defendant through the use and dissemination of Plaintiff's and Class members' personal information … which Defendant used and disseminated for its own monetary benefit") (cleaned up); *Mirmalek v. Los Angeles Times Communications LLC*, 2024 WL 5102709 at *4 (N.D. Cal. Dec. 12, 2024) (similar); *Heiting v. FKA Distrib. Co. LLC*, 2025 WL 1430663, at *2 (C.D. Cal. May 15, 2025) ("[A]lleg[ations] that the software effectively

de-anonymizes the website user and has collected tracking information on her irrespective of her lack of a TikTok account …. suffice to establish a concrete injury.”).

*Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986 (9th Cir. 2023), is inapposite. In that case, the plaintiffs alleged “the *retention* of illegally obtained records because the retention amounted to an invasion of their privacy interests.” *Id.* at 993 (emphasis added). But the retention of records is a far cry from the *dissemination*, *sale*, *and disclosure* of comprehensive user profiles that Plaintiffs allege here. *Id.* (“Where we have held that the retention of illegally obtained records resulted in a concrete injury, we have always identified something beyond retention alone … such as … a violation of the common law right to privacy…); *Brown*, 685 F. Supp. 3d at 924 n.7 (distinguishing *Phillips* from CIPA case where plaintiffs “have shown the information collected was private browsing data which Google used to, among other things, sell advertisements”).

## II. PLAINTIFFS STATE A CLAIM FOR INTRUSION UPON SECLUSION

Defendants contend that Plaintiffs’ intrusion upon seclusion claim fails because “Plaintiffs do not have a reasonable expectation of privacy in their general online behavior,” and that the intrusion is not “highly offensive to a normal person.” MTD at 7-8 (cleaned up). That is wrong. *First*, courts in the Ninth Circuit and this District have held that a reasonable expectation of privacy exists in cases like the present. In *Katz-Lacabe*, Chief Judge Seeborg followed the Ninth Circuit’s analysis in *In re Facebook Tracking Litig.*, 956 F.3d at 603-06, and found that a “reasonable expectation of privacy” arises from allegations where a company “allegedly compile[s] highly personalized profiles from sensitive browsing histories and habits.” 668 F. Supp. 3d at 942; *see also id.* at 941 (finding a reasonable expectation of privacy where a defendant “gains unwanted access to data by electronic or other covert means,” evaluated by “a consideration of the customs, practices, and circumstances surrounding the data collection”); *Riganian*, 2025 WL 2021802, at *6 (finding violation when defendant tracked “individuals’ activity across thousands of websites” and “combined [it] with extensive offline records gathered over decades, to generate uniquely identifying profiles on those individuals”). Chief Judge Seeborg specifically noted that the plaintiffs’ allegations about “Oracle’s accumulation of a vast repository of personal data … from compiling [the p]laintiffs’ browsing activity, online communications, *and* offline activity … is what contravenes the reasonable

expectation of privacy." *Id.* at 942 (internal citation and quotation marks omitted) (emphasis in original); *see also In re Facebook*, 956 F.3d at 605 (finding users' privacy expectations were violated because the information disclosed in "could divulge a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform").

This is precisely what Plaintiffs allege here—that Defendants unlawfully track, collect, and deanonymize Plaintiffs' web browsing activity and identification such that Defendants are able to create "detailed profiles on nearly every aspect of every American's life" by matching individuals' identities "with the data collected about them." Compl. ¶ 229; *see also id.* ¶¶ 252-58, 274-80; *id.* ¶ 222 (Defendants track "the future web activity" of individuals and adds it to consumers' profiles).

Defendants rely on inapposite and inapplicable caselaw, first citing to *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726 (N.D. Cal. June 24, 2025), *Khamooshi v. Politico LLC*, 2025 WL 1408896 (N.D. Cal. May 13, 2025), and *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) to argue that Plaintiffs failed to show Defendants collected sufficiently private user data. *See* MTD at 7. But in those three cases, plaintiffs only alleged unlawful recording of their IP addresses or general geographic data. Here, Plaintiffs allege that Defendants collect and combine data on individuals from "thousands or millions of websites" to conduct dragnet surveillance and then "deanonymize the information." Compl. ¶¶ 223-229.[1] *Saeedy v. Microsoft Corp.* is inapplicable because Plaintiffs allege Defendants collected, de-anonymized, and compiled into comprehensive user reports significant personal¸ *identifiable* user information—not mere "mouse movements" and anonymized data." 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023).

Defendants' reliance on *Hubbard v. Google LLC*, 2024 WL 3302066 (N.D. Cal. July 1, 2024) and *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140 (S.D. Cal. May 8, 2024) fares no better.

[1] *Compare, e.g.*, *Kishnani*, 2025 WL 1745726, at *5 (finding the plaintiff "has no expectation of privacy as to … his IP address or general geographic location"); *Khamooshi*, 2025 WL 1408896, at *3 ("[N]o reasonable expectation of privacy attaches to IP addresses."); *Carolus*, 2025 WL 1338193, at *1 (finding disclosure of "IP addresses … and the general location of that device, …. does not cause the kind of harm that can be vindicated in federal court.") *with* Compl. ¶¶ 313-14 ("Plaintiffs and Class Members did not and could not authorize Defendants to intercept data on every aspect of their lives and activities. … specifically … Defendants engage in widespread data collection and interception of Plaintiffs' and Class Members' internet and app activity … Defendants create comprehensive profiles based on this online and offline data … and sell[s] or disclose[s] these profiles … to an unknown number of advertisers for use in the real-time-bidding process.").

MTD at 7. Unlike here, the plaintiffs in *Hubbard* alleged the data collector was a first party website, not a third party. *See Hubbard*, 2024 WL 3302066, at *1-2 (N.D. Cal. July 1, 2024) (plaintiffs accessed Youtube and "Google operates YouTube" and "collects" "information about Youtube's users"). And in *Thomas*, the plaintiff "fail[ed] to allege the Session Replay Provider or Providers procured by Defendant actually collected … 'fingerprint' information from Plaintiff or any other visitor to Defendant's website. *Thomas*, 2024 WL 2060140, at *1. Plaintiffs allege such fingerprinting or profiling here; specifically, that Defendants squat in the dark, behind layers of third parties and tracking tools, to ultimately combine Experian's cache of "behavioral and demographic data" with offline and newly collected online data to create "detailed profiles on individual users." Compl. ¶¶ 74, 86, 122-123, 134-142, 245, 278.

*Second*, Plaintiffs have shown that Defendants' conduct constitutes "egregious breach[es]" of social norms that are "highly offensive" to the reasonable person. MTD at 7-8. *Katz-Lacabe* is instructive. There, as here, the plaintiffs alleged the defendant's "accumulation of a 'vast repository of personal data.'" *Katz-Lacabe*, 668 F. Supp. 3d at 942. The court denied the defendant's motion to dismiss an intrusion upon seclusion claim, finding that "viewing the allegations in the light most favorable to Plaintiffs, such allegations of data collection would go well beyond the 'routine commercial behavior' of collecting contact information for sending advertisements." *Id.*

Similarly here, Defendants "crunch[] 150 billion data points" "with the explicit intention of … track[ing] and target[ing] the same consumer across multiple devices." Compl. ¶¶ 53-54 (cleaned up) (internal citations omitted). Defendants "combine[] this data into detailed profiles on individual consumers that" are "continuously tracked by Tapad." *Id.* ¶¶ 141-42; *see also id.* ¶¶ 226-29; *Riganian*, 2025 WL 2021802, at *7 ("Plaintiffs allege that the Attribute Enrichment feature … effectively render[s] any anonymity functionally meaningless."). Further, Defendants share their user identifiers with other third parties and deanonymize users. *See* Compl. § IV.

Defendants further contend that because the CCPA exists, their conduct "cannot constitute highly offensive conduct." MTD at 8. Defendants are wrong because CIPA protects against the unauthorized surveillance of Californians without *prior* consent, while the CCPA governs the notice, consent, and how data is managed and used *after* it is collected. *See* Cal. Pen. Code § 638.51; Cal.

Civ. Code §§ 1798.100, 1798.115, 1798.130. The CCPA pertains largely to information businesses collect and who they disclose it to later, whereas the CIPA, in contrast, prohibits the "simultaneous dissemination" of that information "to an unannounced second auditor." *Ribas*, 38 Cal. 3d at 360.

In addition, Defendants lean on more inapposite caselaw, all of which is distinguishable. Indeed, all five cases—*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022), *Williams v. DDR Media, LLC*, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023), *In re Google, Inc. Privacy Pol'y Litig*., 58 F. Supp. 3d 968 (N.D. Cal. 2014), *Low v. LinkedIn Corp*., 900 F. Supp. 2d 1010 (N.D. Cal. 2012), and *In re iPhone Application Litig*., 844 F. Supp. 2d 1040 (N.D. Cal. 2012)—dealt with allegations of significantly less categories of data, less tracked data points, and/or the inability to deanonymize users than what is alleged here. *See* 615 F. Supp. 3d 1090-91 (failing to identify users through collected data); 2023 WL 5352896, at *6 (tracking of personal data once with no "detailed personal profiles" insufficient); 58 F. Supp. 3d at 987 (finding only disclosure of "common, basic digital data"); 900 F. Supp. 2d at 1025 (finding Linkedin profile pages' URLs insufficient); 844 F. Supp. 2d at 1063 (finding device ID, "personal data, and geolocation" insufficient). In contrast, Plaintiffs here allege the websites where Defendants initially tracked them and installed cookies on their browsers for ease of future tracking, as well as how Defendants deanonymize that collected user data and compile detailed user profiles to sell to the highest bidder. *See generally* Compl. ¶¶ 48, 53-54, 141-42, 151-222, 226-29. In other words, Defendants' misplaced reliance on these cases only highlights precisely how egregious and intrusive Experian's constant online user tracking and maintenance of comprehensive online and offline user profiles here is. *See* Argument § I.

Moreover, to the extent the Court disagrees with Plaintiffs, "determinations of the egregiousness of the privacy intrusion are not usually resolved at the pleading stage." *Katz-Lacabe*, 668 F. Supp. 3d at 942; *see also In re Facebook*, 956 F.3d at 606 (egregiousness "is an issue that cannot be resolved at the pleading stage."); *Gabrielli*, 2025 WL 1939957, at *10 ("[I]t is premature to dismiss Gabrielli's claims based on a determination of how offensive or serious the privacy intrusion is."); *In re Facebook, Inc., Consumer Priv. User Profile Litig*., 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is.").

## III. PLAINTIFFS ALLEGE A VIOLATION OF CIPA § 631

### A. Plaintiffs Allege The Contents Of Their Communications Were Intercepted

Defendants argue "Plaintiffs fail to plausibly allege that Experian intercepted the "contents" of any Communication." MTD at 8. This is wrong, as "[c]ontent is defined to 'include[ ] any information concerning the substance, purport, or meaning of [the] communication.'" *Brown*, 685 F. Supp. 3d at 935. This includes "the links, pages, and tabs users click and view and the search terms they employ," including those contained in URLs. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) ("URLs which disclose search terms that reveal website users' 'personal interests, queries, and habits' are 'contents' of communications under CIPA and ECPA.").

Contrary to Defendants' contention, the Complaint contains clear allegations of detailed URLs on websites that were captured by the Partner Pixels, which call the Tapad Pixel onto the exemplar websites to aid the wiretapping and enable Defendant to use these intercepted communications to amass profiles. Compl. ¶¶ 155, 169, 195, 204, 215. These websites are a small sample of the hundreds or thousands of websites where Defendant operates and intercepts or aids in the interception of URLs with content information. *Id.* ¶ 121. In other words, Plaintiffs allege that the Partner Pixels collect detailed URLs (which are content), and shares that with Defendants who use it to create comprehensive profiles. Because these "detailed URLs reflect[] users' queries," they constitute content. *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) (Lin, J.); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. June 13, 2022) (finding under the Electronic Communications Privacy Act that "referrer URL that caused navigation to the current page," details about "the publisher object of the site or app," and "the content within the site or app" all were "content"); *Brown*, 685 F. Supp. 3d at 936 ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" are content).

### B. Plaintiffs Allege Their Communications Were Intercepted In Transit

Defendants next argue "Plaintiffs fail to show that any communication was incepted in transit." Not so. "While a plaintiff must do more than merely restate the pleading requirement of real time interception, the standard is not overly burdensome. Allegations that communications are

intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Mata v. Zillow Grp.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) (cleaned up). "[A] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant." *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023). The Complaint contains exactly those allegations. The operation of the Tapad Pixel and what information it or the Partner Pixels collect is described in great detail. Compl. ¶¶ 59-120. The Complaint alleges that the interceptions at issue are made in real time as the information is entered into a given website. *Id.* ¶¶ 1, 155. The Complaint then provides multiple examples of this process occurring. *Id.* ¶¶ 169, 195, 242, 289. That is sufficient. *Riganian*, 2025 WL 2021802 at *10; *Doe v. Call-On Doc, Inc.*, 2025 WL 1677632, at *12 (S.D. Cal. June 13, 2025) (finding sufficient allegations of "a simultaneous transmission of [the plaintiff's] information to" third parties and the third parties "intercept[ion of] Plaintiff's PII and PHI in real time").

### C. Plaintiffs Allege Defendants Used The Intercepted Information

Defendants' argument that Plaintiffs "fail to show that Experian "read, attempted to read, or to learn the contents of [Plaintiffs'] communications" strains credulity. MTD at 10. *First*, contrary to Defendant's contention, the information intercepted in detailed URLs is unencrypted and written in plain language. Compl. ¶¶ 93, 155, 169, 185, 195, 204, 215. *Second*, the Complaint could not be clearer that "Defendants [] combine the data from each and every website a person visits with other data collected by Experian to bolster the profiles of Experian sells as part of its products." *Id.* ¶ 225. This includes Plaintiffs. *See id.* ¶¶ 257, 280. In addition, the complaint contains extensive allegations of how and why this occurs. *See id.* ¶¶ 1-2; *id.* ¶¶ 141-142 ("Experian combines this data into detailed profiles on individual consumers …. These profiles, **which include the data continuously tracked by Tapad**, are" sold as "products available to marketers.") (emphasis added); *id.* ¶¶ 147, 164, 232.

Courts have found allegations like Plaintiffs' more than sufficient to allege "use" of intercepted information at the pleadings stage. For example, in *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1200 (S.D. Cal. 2024), the plaintiff alleged that the defendant allowed third party Salesforce to "'interpret, analyze, and also use [the] intercepted conversations' for Salesforce's own

'business purposes,'[] and that Salesforce 'exploit[s] that information for financial gain[.]'" The Court held that sufficed for plaintiff to establish that Salesforce violated Clause Three because due to the allegations that Salesforce used the data for its own purpose and for monetary gain. *See also R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994, at *4 (N.D. Cal. June 23, 2025) ("These allegations, drawing all reasonable inferences in Plaintiffs' favor, plausibly plead Google performs 'some effort at understanding the substantive meaning of the message.'").

## IV. PLAINTIFFS ALLEGE A VIOLATION OF THE ECPA

Defendants argue that "the crime-tort exception does not apply" to Plaintiffs' ECPA claims. MTD at 12. Defendants misinterpret the law. For an ECPA claim, "consent is not a defense where the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (cleaned up). "Under this exception, Plaintiffs must allege that either the 'primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously.'" *Id*. Numerous courts, including this Court, have found "tortious intent sufficiently pled where 'Plaintiffs have alleged that [technology companies] intercepted their communications for the purpose of associating their data with preexisting user profiles' [,] that this 'association of their data with preexisting user profiles [allegedly] violated state law,'" and that the technology companies "benefited from this interception by using the information to sell ads to other third-party advertisers." *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) (Lin, J.) (quoting *Brown*, 525 F. Supp. 3d at 1067).

Defendants, relying on the *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001) line of cases, contend that the crime-tort exception cannot apply if they were primarily financially motivated. MTD at 12. Judge Tigar rejected this argument in *Riganian*:

> [T]his Court is not persuaded that commercially exploiting unlawfully obtained information is 'licit' merely because it is profitable. …. The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime—it was to make money.'

*Riganian*, 2025 WL 2021802 at *9-10 (denying to "adopt any bright-line rule insulating financial motives from the crime-tort exception") (cleaned up). Other courts agree. *See*, *e.g.*, *R.S. v. Prime*

*Healthcare Servs., Inc.*, 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025) (applying similar reasoning as *Riganian*); *Doe v. Tenet Healthcare Corp.*, 2025 WL 1635956, at *24 (E.D. Cal. June 9, 2025) (finding "financial[] motivat[ions] do not immunize [defendants] from liability under the ECPA."); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("[T]he existence of a financial motivation is not a get-out-of-liability-free card.").

Here, as in *Riganian*, Plaintiffs allege Defendants intercepted their communications with an unknown number of websites for the purpose of "combin[ing] the data from each and every website a person visits with other data collected by Experian to bolster the profiles of Experian sells as part of its [data profile] products." Compl. ¶ 225; *see also id.* ¶¶ 1, 2, 147, 164, 178, 186, 197, 207, 220, 232, 280. This is more than enough to deny Defendants' Motion.

## V. PLAINITFFS ALLEGE A VIOLATION OF CIPA § 638.51

### A. CIPA § 638.51 Has A Private Right Of Action

Cal. Pen. Code § 637.2(a) states that "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation." CIPA § 638.51 is part of "this chapter." According to that plain statutory language, Plaintiffs may pursue a cause of action against Defendants. Resisting this simple conclusion and unambiguous statutory language, Defendants contends "nothing in the statute indicates an intention to create a private right of action for violations of Section 638.51." MTD at 13. Courts have universally rejected this argument, finding that "§ 637.2 expressly states that all CIPA violations, including § 638.51, confer a private right of action," and "Defendant[s] offer[] no convincing authority to suggest that this § 637.2 is per se invalid or that it does not apply to § 638.51." *Moody v. C2 Educ. Sys. Inc*, 742 F. Supp. 3d 1072, 1078 (C.D. Cal. 2024); *see also Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *2 (C.D. Cal. Feb. 3, 2025) ("Section 637.2 provides a private right of action for violations of CIPA"). The harmonious-reading canon also suggests that CIPA § 637.2's private right of action encompasses CIPA § 638.51. *See Gila River Indian Cmty. v. United States*, 729 F.3d 1139, 1145 (9th Cir. 2013), *as amended* (July 9, 2013) (the court should "fit … all parts [of a statute] into a harmonious whole.").

Defendants claim that because the CIPA's legislative history shows it was enacted to protect against "new devices and techniques for eavesdropping upon and recording such private

communications" while a "pen register" is not a "wiretap," CIPA's private right of action cannot apply to CIPA § 638.51. But "the text of a law controls over purported legislative intentions unmoored from any statutory text," and "the Court may not replace the actual text with speculation as to Congress' intent." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024). And here, Cal. Pen. Code § 637.2 provides a private right of action for "a violation *of this chapter*," which includes CIPA § 638.51. CIPA § 637.2 (emphasis added). Moreover, each of the cases and opinions Defendants cite predate the enactment of CIPA § 638.51, let alone comprehensive surveillance technology like Defendants'. And as this Court has recognized, "the California Supreme Court has instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests." *Shah*, 754 F. Supp. 3d at 930 (cleaned up). Ensuring that Californians' personal information is not collected and disseminated by data brokers without knowledge or consent, as Plaintiffs allege here, fulfills this legislative policy. *Id.* at 933 ("The pen register statute is broadly written, and under California law, is to be interpreted broadly to protect privacy and to be applied to new techniques and technologies. That statute reflects the Legislature's judgment that an individual's consent is required before others may track certain addressing information in their electronic communications for non-law enforcement purposes.").

**B. The Tapad Pixel Is A "Pen Register" Under CIPA**

Defendants next argue that CIPA § 638.51 only applies to "telephone numbers," not to "browsing activity and marketing identifiers." MTD at 13. This Court, and *every federal court* to consider this argument, has rejected it. *See, e.g.*, *Shah*, 754 F. Supp. 3d at 929 ("Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register."); *Riganian*, 2025 WL 2021802, at *11 ("[F]ederal courts have interpreted the plain language of Section 638.50 expansively to find that 'pen registers' includes data collection tools beyond those th[at] record information from telephones.");[2] *Gabrielli*, 2025 WL 1939957 at *11 (same); *Mirmalek*, 2024 WL 5102709, at *3 (rejecting argument that a pen register must be "telephone technology") (cleaned up); *Moody*, 742 F. Supp. 3d at 1076 (same); *Lesh v. Cable News*

[2] In *Riganian*, Judge Tigar also expressly rejected the Superior Court's conclusion in *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3-4 (Cal. Super. Ct. Jan. 27, 2025), which Defendants rely on. *See* MTD at 13-14; *Riganian*, 2025 WL 2021802, at *12.

*Network, Inc*., 767 F. Supp. 3d 33, 41 (S.D.N.Y. 2025) (same). Likewise, this Court and others have found that IP addresses and device and browser information, and unique identifiers are "routing, addressing, or signaling" information covered by the CIPA. *See , e.g.*, *Shah*, 754 F. Supp. 3d at 929 (agreeing with "[p]laintiffs' theory [] that the third-party Trackers operate as pen registers under the meaning of the statute because they are processes that record users' IP addressing information"); *Greenley*, 684 F. Supp. 3d at 1050 ("[S]oftware that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting'" is a pen register); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025) (sustaining CIPA § 638.51 claim where third party collected "IP address … operating system information, [and] browser information," among other identifiers).

Defendants argue that to side with Plaintiffs "would bar the collection of general online information, such as IP addresses, and the Internet could not function." MTD at 14 (cleaned up). Both cases Defendants cite, however, "involve situations where users were directly communicating with the party alleged to be operating the pen register and voluntarily sent that party their IP address"—that is, the *website operator*, and not a third-party data broker like Defendants here. *Shah*, 754 F. Supp. 3d at 932 n.3 (distinguishing *Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009), which Defendants cite); *see also Autotrader.com*, 762 F. Supp. 3d at 930 ("Plaintiff alleges that the tracking software captured more than just her IP address … and that this information was sent to third parties, not just Defendant."). And claiming the Internet cannot function without allowing Defendants to profile consumers—or requiring websites to procure prior consent to such conduct—is absurd. Regardless, "[t]o the extent that [Defendants] believe[] the statute may impose too many burdens when applied to the realities of modern technologies … the question of whether the statute's scope should be narrowed ultimately rests with the Legislature, not the courts." *Shah*, 754 F. Supp. 3d at 933.

**C. The Rule Of Lenity Does Not Save Defendants' Argument**

Last, Defendants state that their "interpretation of Section 638.51 is also consistent with the rule of lenity, which "favors [a] narrow interpretation" of the statute. MTD at 14. Yet Defendants fail to cite a single case supporting their argument. MTD at 14. Presumably, this is because the California Supreme Court has already rejected Defendants' argument in *Smith v. LoanMe, Inc.*, 11

Cal. 5th 183 (2021). The California Supreme Court noted the rule of lenity only applies "when two reasonable interpretations of the same provision stand in relative equipoise," not "every time there are two or more reasonable interpretations of a penal statute." *Id.* at 202 (cleaned up). Applying that standard to sections of the CIPA statute, the California Supreme Court found "the statutory language" weighed against the defendant's argument, which the California Supreme Court accorded the most "significance." *LoanMe*, 11 Cal. 5th at 202 (rejecting application to CIPA § 632.7). Here, there is no ambiguity—let alone 'grievous ambiguity'—in the text of CIPA § 638.51. On the contrary, the "text is clear." *Shah*, 754 F. Supp. 3d at 929 (Lin, J.); *Riganian,* 2025 WL 2021802 at *12 (rejecting application of rule of lenity because "LiveRamp has argued for a certain interpretation of Section 638.50(b), but it has not established that any 'grievous ambiguity' in the statute's express language").

## VI. PLAINTIFFS ALLEGE DEFENDANT WAS UNJUSTLY ENRICHED

Last, Defendants argue "there is no stand-alone claim for unjust enrichment in California" and "Plaintiffs have failed to allege they lack an adequate remedy at law as required for an unjust enrichment [remedy]." MTD at 14. Not so. *First*, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Riganian*, 2025 WL 2021802 at *12 (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). *Second*, "Plaintiffs have alleged that [Experian] has unjustly profited from tracking, disclosing, and profiting from Plaintiffs and U.S. Class members' internet activity and real-world activity to third parties without [] knowledge or consent, conferring benefits at the expense of their privacy rights. Because the [Complaint] contains detailed factual allegations as to how [Experian] has violated Plaintiffs' privacy rights to create a surveillance ecosystem at the heart of its revenue generation without their consent, Plaintiffs have sufficiently stated a claim for unjust enrichment." *Id*. (cleaned); *see also Katz-Lacabe*, 2023 WL 6466195, at *6. *Second*, Plaintiffs may pursue this claim in the alternative. *See* Fed. R. Civ. P. 8(d)(2). And, for the reasons stated above, the allegations in the Complaint suffice for an unjust enrichment claim. *Riganian*, 2025 WL 2021802, at *12.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in full. To the extent the Court grants Defendants' Motion, Plaintiffs respectfully request leave to amend.

Dated: July 25, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
Max S. Roberts (*Pro Hac Vice Forthcoming*)
Victoria X. Zhou (*Pro Hac Vice Forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com
mroberts@bursor.com
vzhou@bursor.com

**BURSOR & FISHER, P.A.**
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jwilner@bursor.com

*Attorneys for Plaintiffs*