John A. Vogt, Bar No. 198677
javogt@jonesday.com
Cheryl L. O'Connor, Bar No. 173897
coconnor@jonesday.com
Ryan D. Ball, Bar No. 321772
rball@jonesday.com
Matthew T. Billeci, Bar No. 329014
mbilleci@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612.4408
Telephone: +1.949.851.3939
Facsimile: +1.949.553.7539

Attorneys for Defendants
EXPERIAN DATA CORPORATION, EXPERIAN INFORMATION SOLUTIONS, INC., EXPERIAN PLC, and TAPAD, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARIEL GILLIGAN and LOGAN MITCHELL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

EXPERIAN DATA CORPORATION, EXPERIAN PLC, EXPERIAN INFORMATION SOLUTIONS, INC., and TAPAD, INC.,

Defendants.

Case No. 3:25-cv-02873-RFL

**DEFENDANTS EXPERIAN DATA CORPORATION, EXPERIAN INFORMATION SOLUTIONS, INC., EXPERIAN PLC, AND TAPAD, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

Date: September 16, 2025
Time: 10:00 a.m.
Courtroom: 15

**TABLE OF CONTENTS**


| | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 1 |
| I. PLAINTIFFS FAIL TO ESTABLISH ARTICLE III STANDING | 1 |
| II. PLAINTIFFS FAIL TO ALLEGE AN INTRUSION UPON SECLUSION CLAIM | 5 |
| III. THE WIRETAP CLAIMS FAIL | 7 |
| IV. THE PEN REGISTER CLAIMS ALSO FAIL | 9 |
| V. UNJUST ENRICHMENT IS NOT AN INDEPENDENT CAUSE OF ACTION | 10 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) .......... 8

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 1

*Capitol Recs. Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009) .......... 9

*Carolus v. Nexstar Media Inc.*,
2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .......... 1, 3, 4, 10

*Casillas v. BOP LLC*,
2025 WL 2161288 (Cal. Super. June 18, 2025) .......... 9

*Columbia Pictures Indus. v. Bunnell*,
2007 WL 2080419 (C.D. Cal. May 29, 2007) .......... 9

*Daghaly v. Bloomingdales.com, LLC*,
2024 WL 5134350 (9th Cir. Dec. 17, 2024) .......... 1

*Frasco v. Flo Health, Inc.*,
2025 WL 1433825 (N.D. Cal. May 19, 2025) .......... 4

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 4

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 4

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 8

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 6

*Heiting v. FKA Distrib. Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 1, 2, 4

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 6

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022).......... 10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020).......... 4, 5

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 6

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014).......... 7

*Ingrao v. AddShoppers, Inc.*,
2024 WL 4892514 (E.D. Pa. Nov. 25, 2024).......... 2

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 4, 5, 8

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) .......... 10

*Khamooshi v. Politico LLC*,
2025 WL 1408896 (N.D. Cal. May 13, 2025) .......... 1, 3, 4, 5

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... passim

*Massie v. Gen. Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022) .......... 5

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023).......... 2

*People v. Garcia*,
980 P.2d 829 (Cal. 1999) .......... 10

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023).......... 3, 4

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022).......... 8

*Posadas v. Goodyear Tire & Rubber Co.*,
2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ........ 2, 4, 6, 7

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ........ 4

*Riganian v. LiveRamp Holdings, Inc.*,
2025 WL 2021802 (N.D. Cal. July 18, 2025) ........ 5

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ........ 8

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........ 2

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) ........ 8

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........ 7, 8

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........ 3

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 7

*Williams v. DDR Media, LLC*,
2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ........ 5, 6

## INTRODUCTION

Plaintiffs' opposition confirms that their claims cannot move forward. Rather than addressing the specific information Experian purportedly collected about ***them***—general browsing activity on a single website, device identifiers, and IP addresses—Plaintiffs devote the bulk of their opposition to rehashing their general and conclusory allegations about how Experian allegedly collects and shares data across the internet. But Plaintiffs' speculative grievances about Experian's data collection practices do not confer standing, particularly when Plaintiffs' own allegations confirm that Experian collected basic information about a single website visit. On the merits, Plaintiffs' claims fare no better. Nothing in Plaintiffs' opposition establishes that Experian read or attempted to read the content of any of Plaintiffs' communications during their single website visit, let alone that Plaintiffs had a reasonable expectation of privacy over their interactions on the sites. Accordingly, Plaintiffs' case should be dismissed.

## ARGUMENT

### I. PLAINTIFFS FAIL TO ESTABLISH ARTICLE III STANDING

Plaintiffs do not dispute that the only information Experian allegedly collected about ***them*** is their general browsing activity on a single website, device and browser data, and IP addresses. Nor do they dispute that the complaint fails to allege "when and how many times [they] visited the site[s], what information [they] provided, what [specific] information [Experian] captured, whether [they were] aware of [Experian's] tracking practices, or if [they had] any reason to believe that [they were] indeed de-anonymized." *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025). Thus, Plaintiffs concede that they do not "allege any basic facts from which the Court could infer a concrete injury," *id.*, let alone "identify any specific personal information [they] disclosed that implicates a protectable privacy interest," *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023). That should end the inquiry. Plaintiffs' claims should be dismissed for lack of Article III standing. *See, e.g.*, *Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, at *1-2 (9th Cir. Dec. 17, 2024); *Khamooshi v. Politico LLC*, 2025 WL 1408896 (N.D. Cal. May 13, 2025); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *3 (N.D. Cal. June 24, 2025); *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025);

*Posadas v. Goodyear Tire & Rubber Co.*, 2024 WL 5114133, at *4 (S.D. Cal. Dec. 13, 2024); *Heiting*, 2025 WL 736594, at *3.

Unable to allege that Experian collected any specific personal information about ***them***, Plaintiffs recycle their generalized and conclusory allegations, claiming that Experian collected information about "how they interacted with dozens or even hundreds of websites, deanonymized [the information], combined [the information] with information from other sources, compiled [the information] into detailed profiles, and then further disclosed [the information] to other advertisers, data brokers and giant technology companies for monetary benefit." ECF No. 32 at 9–10[1] (citing Compl., ¶¶ 255–258). But Plaintiffs' complaint is devoid of any facts to substantiate their allegations. Plaintiffs do not identify any other websites ***they*** visited, any of ***their*** information Experian combined from other sources (or even what those sources were), or any of ***their*** information that was compiled into profiles. Nor do Plaintiffs identify to whom Experian disclosed or sold ***their*** information. To the contrary, Plaintiffs' claims amount to nothing more than "mere speculation" about the type of information Experian ***may*** collect about them, which is not enough to establish standing. *Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514, at *8 (E.D. Pa. Nov. 25, 2024) (finding that "allegations that AddShoppers' consumer profiles may contain personal information are far too speculative to support standing" and that plaintiffs must plead "that Defendants disclosed their personal or private information, such as, for example, their personal credit card, financial, bank account or medical information" to confer standing); *see also Kishnani*, 2025 WL 1745726, at *4 (rejecting plaintiff's "hypothetical" allegations about the type of information defendant "could" collect about him); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (finding plaintiff's allegations "insufficient to allege a concrete harm" where she did not identify the specific type of personal information that the defendant allegedly collected about her). In short, Plaintiffs cannot have standing predicated on alleged online "profile" building where they do not allege any facts to establish that a profile could have even been built based on a single website visit.[2]

---

[1] Page citations to Plaintiffs' opposition are based on CM/ECF page numbering.

[2] This Court has recognized the distinction between single and multiple website visits with respect to consumer injury and reasonable expectation of privacy. *See Shah v. Fandom, Inc.*, 754

"[E]ven if Plaintiff[s] allegations were sufficiently concrete and particularized (they are not), Plaintiff[s] ha[ve] failed to allege the invasion of a legally protected right." *Kishnani*, 2025 WL 1745726, at *4. Courts in this District routinely have found that the very information Experian allegedly collected about ***Plaintiffs***—their browsing activity, device and browser data, and IP addresses—does not implicate a protectable privacy interest. *See, e.g.*, *id.* ("The mere collection of basic contact information by software, or where the plaintiffs merely visited the website, are not concrete harms."); *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) (finding that plaintiffs lacked standing where they alleged only that defendant tracked "browser and device data" and "other identifying information" alongside IP addresses); *Khamooshi*, 2025 WL 1408896, at *3 (finding that plaintiffs allegations "that Defendant disclosed their 'browser and device data' and 'other identifying information" along with their IP addresses "are too vague to assert a protectable privacy interest"). The Ninth Circuit likewise has made clear that the type of information Plaintiffs identify here does not "give[] rise to reputational harm or injury to privacy interests." *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 996 (9th Cir. 2023) (holding that "names, birthdays, social security numbers, occupations, addresses, social media profiles, and political views and associations" are not "so sensitive that another's access to that information 'would be highly offensive to a reasonable person'") (citation omitted); *see also United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in . . . the IP addresses of the websites they visit.").

Plaintiffs largely ignore these cases, seeking only to distinguish *Phillips* on the basis that it addressed data "retention," not "dissemination." ECF No. 32 at 11. But this is a distinction without a difference. The relevant question is whether "the ***type*** of information" at issue "is so sensitive that another's access to that information would be highly offensive to a reasonable person." *Phillips*, 74 F.4th at 996 (emphasis added). And the ***type*** of information here—IP addresses, device identifiers,

---

F. Supp. 3d 924, 932 (N.D. Cal. 2024) ("Perhaps Plaintiffs should expect to reveal their IP addresses to the gamespot.com website, and possibly even to third parties who provide the advertisements that load when Plaintiffs visit that website. But that does not necessarily mean that Plaintiffs should reasonably expect to have Trackers installed that send their IP addresses to third parties every time Plaintiffs visit gamespot.com.").

and browsing activity on innocuous websites—"does not cause the kind of harm that can be vindicated in federal court."[3] *Carolus*, 2025 WL 1338193, at *1 (citing *Forrester*, 512 F.3d at 510-12); *see also Kishnani*, 2025 WL 1745726, at *1 (finding that plaintiff lacked standing where defendant's website "automatically . . . sen[t] information to TikTok" including "device and browser information, geographic information, referral tracking, and URL tracking"); *Heiting*, 2025 WL 736594, at *1 (no standing where plaintiff alleged Homedics.com "gather[ed] visitors' device and browser information, geographic location, and other details, and sen[t] them to TikTok.").

Plaintiffs' authority does not establish otherwise. Each of those cases involved highly sensitive personal information, often collected over an extended period of time.[4] Plaintiffs make no such allegations. Instead, they plead little more than the collection of basic information about their visit to a single website—Bon Appetit (to view "recipe articles") or Buzzfeed (to view "articles" on "popular culture")—over which Plaintiffs had no reasonable expectation of privacy.

---

[3] Plaintiffs also suggest that *Phillips* does not apply in CIPA cases. But numerous courts have relied on *Phillips* in finding that plaintiffs lacked standing to pursue CIPA and other privacy claims. *See*, *e.g.*, *Khamooshi*, 2025 WL 1408896, at *4 ("The Ninth Circuit's decision in *Phillips* is instructive."); *Kishnani*, 2025 WL 1745726, at *2; *Posadas*, 2024 WL 5114133, at *4. This Court should do the same.

[4] *See, e.g.*, *Frasco v. Flo Health, Inc.*, 2025 WL 1433825, at *1 (N.D. Cal. May 19, 2025) (alleging the transmission of "highly personal information about menstruation, ovulation, pregnancy goals, and the like to Google and Meta . . . despite assurances to the contrary by Flo"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (alleging the disclosure of users' "employment history and political and religious affiliations" and data that would "reveal an individual's likes, dislikes, interests, and habits over a significant amount of time"); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) (alleging the collection of plaintiff's personal data, including his "communications related to his personal characteristics, mode of living, purchase decisions, personal choices, app selections, spending habits, and click choices"); *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *1 (N.D. Cal. Mar. 28, 2025) (alleging that the transmission of "user's specific medical or mental health symptoms," "the type of care or treatment that the user is requesting," "information concerning the user's gender, ethnicity, and faith preferences," "the user's health insurance provider," and "information regarding the mental health providers viewed and/or contacted"); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) (alleging that plaintiff selected "Reject All non-essential cookies" but the website still tracked his "demographic information, interests and preferences, shopping behaviors" and "geolocation data"); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023) (alleging that defendant created a "cradle-to-grave" profile of defendants, amassing "vast amounts of personal data" including "intimate details of [Plaintiffs'] lives" for "political" and "other purposes").

Simply put, Plaintiffs' allegations fall woefully short of alleging a concrete and particularized injury. Because Plaintiffs fail to allege that Experian collected ***their*** "personal information, personally identifiable information, or information over which a party has a reasonable expectation of privacy," *Massie v. Gen. Motors LLC*, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022), they lack Article III standing. *See Khamooshi*, 2025 WL 1408896, at *5. ("[A] concrete injury arises only where the alleged harm involves personal information—and specifically, information whose disclosure would be considered 'highly offensive to a reasonable person.'").

## II. PLAINTIFFS FAIL TO ALLEGE AN INTRUSION UPON SECLUSION CLAIM

Plaintiffs' intrusion upon seclusion claim fails for the same reasons. As discussed, Plaintiffs cannot show that Experian "intentionally intruded into a place in which [Plaintiffs had] a reasonable expectation of privacy." *Williams v. DDR Media, LLC*, 2023 WL 5352896, at *5 (N.D. Cal. Aug. 18, 2023) (citation omitted). Plaintiffs' own authorities illustrate why. For example, in *Katz-Lacabe*, the defendant "'allegedly compile[d] *highly personalized profiles from sensitive browsing histories* and habits,' accumulating in "'a vast repository of personal data'" on the plaintiffs. ECF No. 32 at 11 (emphasis added) (quoting *Katz-Lacabe*, 668 F. Supp. 3d at 942). Nothing about Plaintiffs' singular visits to Bon Appetit or Buzzfeed remotely resembles "sensitive browsing," much less that Experian captured "highly personalized profiles" from those visits. Compl., ¶¶ 152, 251, 273.

Moreover, unlike the cases on which they rely, Plaintiffs fail to identify any of ***their*** personal or sensitive data that Experian collected or transmitted. *Cf. Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802, at *3 (N.D. Cal. July 18, 2025) (alleging defendant "compiled decades of offline data" including information on pharmacy website browsing to "view information on specific conditions and medications" about the plaintiffs); *In re Facebook*, 956 F.3d at 605 (finding that defendants' collection activities could "divulge a [specific] user's personal interests, queries, and habits"). Instead, they reiterate nothing more than general allegations about the basic information Experian allegedly collected during a single website visit. Such assertions, however, "are too vague to assert a protectable privacy interest." *Khamooshi*, 2025 WL 1408896, at *3 (alleging that defendants collected plaintiffs' "IP addresses for their devices" and "disclosed their

'browser and device data' and 'other identifying information'"); *Kishnani*, 2025 WL 1745726, at *3 (finding no standing where defendant collected "device and browser information, geographic information, referral tracking, and URL tracking" and "scan[ed] every page of the Website visited for additional information about the visitor, such as name, date of birth, and address").

Even if Plaintiffs could establish a reasonable expectation of privacy in their general online activity, Plaintiffs cannot show that Experian's practices constitute an "egregious breach of social norms" or an intrusion that is "highly offensive" to a reasonable person. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009). As before, Plaintiffs offer nothing more than general and conclusory allegations about how Experian crunches "150 billion data points" to track consumers "across multiple devices" and build "detailed profiles." ECF No. 32 at 13. But again, Plaintiffs' complaint is devoid of any allegations about what "data points" Experian collected and used to build "detailed profiles" about ***Plaintiffs***. Their attempt to mask their pleading deficiencies in generalized allegations fails. *See Posadas*, 2024 WL 5114133, at *4 ("Rather than identify personal information he shared during his visit to the Website, Plaintiff makes generalized and conclusory allegations that Session Replay technology is capable of capturing private data. General allegations such as these are insufficient."); *Kishnani*, 2025 WL 1745726, at *3 (rejecting plaintiffs' attempt to rely on "general allegations" about the defendants' data collection practices).

At bottom, Plaintiffs cannot escape the fact that they do not allege any specific personal or sensitive information Experian collected about ***them***, let alone that such collection practices were egregious. Instead, they allege nothing more than routine data collection practices, which courts have repeatedly found fail to state a common law privacy claim. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090–91 (N.D. Cal. 2022) ("[D]ata collection and disclosure to third parties that is routine commercial behavior is not a highly offensive intrusion of privacy."); *Williams v. DDR Media, LLC*, 2023 WL 5352896, at *6 (N.D. Cal. Aug. 18, 2023) (recording "date and time of plaintiff's visit to DDR Media's website, her keystrokes and clicks on the website, her name, her IP address, her geographic location, her address, and her phone number" is not highly offensive); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014) ("Courts in this district have consistently refused to characterize the disclosure of common, basic

digital information to third parties as serious or egregious violations of social norms."). This Court should not chart a different path.

## III. THE WIRETAP CLAIMS FAIL

Plaintiffs' wiretap claims fare no better. *First*, Plaintiffs concede that the only specific information Experian collected about ***them***—their browsing activity, browser and device data, and IP addresses—is nonactionable record information. *See*, *e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (finding that "header information that Facebook and Zynga transmitted to third parties [which] included the user's Facebook ID and the address of the webpage" does not constitute "content"). So Plaintiffs pivot, again relying on their general allegations about the data collection capabilities of Experian and the Tapad Pixel, including the ability to "collect detailed URLs." ECF No. 32 at 15. But, again, Plaintiffs' "general assertions regarding the capability of [the Tapad Pixel] to intercept the occurrence of actions the user takes on the website . . . are insufficient . . . because the Court cannot determine whether the information constitutes 'contents.'" *Posadas*, 2024 WL 5114133, at *5. Indeed, Plaintiffs fail to detail any of ***their*** interactions on their singular website visit, much less allege that Experian obtained "a URL containing [a] search term" entered by Plaintiffs. *In re Zynga Priv. Litig.*, 750 F.3d at 1108. Thus, without the "specifics of the shared information," *Posadas*, 2024 WL 5114133, at *5, Plaintiffs' wiretap claims fail.

*Second*, Plaintiffs fail to allege that Experian "read, attempted to read, or to learn the contents of [Plaintiffs'] communications *while they were in transit*." *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (emphasis added). While Plaintiffs allege in conclusory fashion that the Tapad Pixel intercepts URLs "in real time," Compl., ¶¶ 169, 195, 242, 289, those allegations do "little more than restate the pleading requirement of real time interception." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023). Indeed, while Plaintiffs detail how Experian purportedly uses the data it collects, "the complaint provides no detail as to how the interception occurs," *id.*, particularly as it relates to Plaintiffs' sole website visits to Bon Appetit and Buzzfeed. *See* Compl., ¶¶ 251–61, 273–83 (no allegations relating to the real time interception of Plaintiffs' communications).

Moreover, Plaintiffs' allegations make clear that Experian "collected" and "compiled"

Plaintiffs' information, *id.*, ¶¶ 256–57, 278–79, meaning that Experian did not read or attempt to read any of this information until it came to rest, not while in transit. Plaintiffs' general allegations confirm the same. *See* Compl., ¶¶ 29–30, 49, 66–67, 71–74, 157, 162–65 (detailing how Experian collects users' information—which is hashed and indecipherable—and then combines that information with other information to ultimately associate it with users' Tapad IDs). Thus, by Plaintiffs' own allegations, Experian "could have only read or attempted to read [the communications] after [they were] received [on Experian's servers], so the [communications] could not have been accessed 'in transit.'" *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) ("Based on the facts alleged in the complaint, Community could have only read or attempted to read Boulton's text after it was received at LL Cool J's Community number, so the text could not have been accessed 'in transit' within the meaning of § 631(a)."); *Torres*, 2025 WL 1135088, at *5 (finding no interception in transit when the software at issue "collected and stored as a series of undeciphered 'events,' which are then provided to host websites to interpret using the ActiveProspect server"). This dooms Plaintiffs' wiretap claims. *See Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (affirming dismissal of wiretap claims where there was no evidence "that Salesforce read or attempted to read [plaintiff's] chat message" in transit).

*Third*, both Bon Appetit and Buzzfeed gave consent to the alleged interception of information, which is "a complete defense to a Wiretap Act claim." *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (quotation omitted)). While Plaintiffs raise the crime-tort exception, the complaint alleges no facts to plausibly show that Experian's purpose for collecting Plaintiffs' information was for criminal or tortious use. To the contrary, the complaint confirms that Experian's "underlying motivation in collecting and selling data about internet users was anything other than to generate revenue." *Katz-Lacabe*, 2024 WL 1471299, at *3. And, in any event, nothing in the complaint establishes, as the Ninth Circuit requires, that Experian's "criminal or tortious purpose [was] separate and independent from the act of the recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022); *see also Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (explaining that the "focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the

interception—its intended use—was criminal or tortious”). Plaintiffs’ federal Wiretap Act claims must therefore be dismissed.

## IV. THE PEN REGISTER CLAIMS ALSO FAIL

Plaintiffs’ pen register claims should also be dismissed. “Section 638.51 did not intend to criminalize the process by which all websites communicate with all users who choose to access them.” *Casillas v. BOP LLC*, 2025 WL 2161288, at *2 (Cal. Super. June 18, 2025). This interpretation is consistent with both the text of the statute and the legislative history.

Starting with the statutory text (which Plaintiffs claim controls), Section 638.50 makes clear that “[a] pen register does not include a ‘process used by a provider or customer of [an] . . . electronic communication service for . . . communications service provided by such provider . . . or other similar services *in the ordinary course of business*.’” *Id.* (quoting Pen. Code, § 638.50(b)) (emphasis added). Thus, under the plain language of the statute, because the Bon Appetit and Buzzfeed websites are “electronic communication service[s],” and because Experian obtains users’ IP addresses during the ordinary course of business, there is no violation of the pen register statute. *Id.* This also accords with “the analogous federal pen register statute,” which exempts from penalty “‘the collection of incoming IP addresses.’”[5] *Id.*, at *3 (quoting 18 U.S.C. § 3121(b)(1); *see also Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007) (“[T]he collection of incoming IP addresses by defendants is exempt from this prohibition pursuant to 18 U.S.C. § 3121(b)(1) because defendants already and necessarily capture such data . . . to operate the website.”); *Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) (“[T]he Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them” because “[i]f it did apply in those cases, then the Internet could not function.”). Thus, like the federal statute, Section 638.51 plainly exempts the collection of basic information in the ordinary course of business, such as IP addresses.

The legislative history likewise establishes that Section 638.51 was not intended to impose

[5] Indeed, “[t]he federal statute is mirrored by Penal Code section 638.51, subdivision (b)(1), which authorizes a provider of an electronic communications service to use a pen register to ‘operate, maintain, and test [an] … electronic communications service.’” *Id.*

civil liability for the routine collection of IP addresses. While Plaintiffs claim that "§ 637.2 provides a private right of action for a violation of . . . § 638.51," ECF No. 32 at 19, the legislative history makes clear that Section 637.2 was enacted to regulate "eavesdropping upon and recording such private communications." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 115 (2006) (emphasis added). Plaintiffs do not dispute that pen registers are not eavesdropping devices or "wiretaps." 86 Cal. Op. Att'y Gen. 198 n.1 (2003) (citing *Smith v. Maryland*, 442 U.S. 735, 736 n. 1 (1979); *People v. Blair*, 25 Cal. 3d 640, 654 n.11 (1979)). Instead, without any support, they claim that the legislature intended Section 637.2—which was enacted 50 years before Section 638.51—to impose civil liability for routine collection of general online information. But adopting this view would transform virtually every device that communicates over the internet into a pen register and render nearly every website operator a criminal. Such an "absurdity" is precisely what the rule of lenity is intended to avoid. *See People v. Garcia*, 980 P.2d 829, 835 (Cal. 1999); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1200–01 (9th Cir. 2022) (explaining that the rule of lenity "favors [a] narrow interpretation . . . . so as not to turn a criminal hacking statute into a 'sweeping Internet-policing mandate.'"). Plaintiffs' pen register claims should be dismissed.

## V. UNJUST ENRICHMENT IS NOT AN INDEPENDENT CAUSE OF ACTION

Plaintiffs' unjust enrichment claim is infirm. Plaintiffs argue that a claim for unjust enrichment can be construed "as a quasi-contract claim seeking restitution." ECF No. 32 at 21. But Plaintiffs provide "no allegations about the potential monetary value of their IP addresses," browsing activity or device identifiers, *Carolus*, 2025 WL 1338193, at *1, let alone how Experian benefited from the collection of Plaintiffs' singular website visits. Nor do Plaintiffs "allege that they lost an economic interest in their data." *Id.* Thus, even if the Court construes Plaintiffs' unjust enrichment remedy as a quasi-contract claim, the claim would still fail because Plaintiffs offer nothing more than threadbare and conclusory allegations.

## CONCLUSION

For the reasons set forth above, and those in Experian's opening brief, the Court should dismiss Plaintiffs' complaint in its entirety.

Dated: August 8, 2025

JONES DAY

By: */s/ John A. Vogt*
John A. Vogt

Attorneys for Defendants
EXPERIAN DATA CORPORATION,
EXPERIAN INFORMATION SOLUTIONS,
INC., EXPERIAN PLC, and TAPAD, INC.